IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EXIT 282A DEVELOPMENT COMPANY,  3:12-CV-939-BR
LLC, a limited liability company,
and LFGC, LLC, a limited liability OPINION AND ORDER
company,

   Plaintiffs,

v.

MARILYN WORRIX, BARTON EBERWEIN,
TIM JOSI, GREG MACPHERSON,
JERRY LIDZ, CATHERINE MORROW,
and SHERMAN LAMB, all in
their official capacities as
members of the Land Conservation
and Development Commission;
TOM HUGHES, SHIRLEY CRADDICK,
CARLOTTA COLLETTE, CARL HOSTICKA,
KATHRYN HARRINGTON, REX BURKHOLDER,
BARBARA ROBERTS, ROBERT LIBERTY,
and ROD PARK, all in their official
capacities as Metro councilors;
CLACKAMAS COUNTY; and CHARLOTTE
LEHAN, LYNN PETERSON, ANN LININGER,
PAUL SAVAS, JIM BERNARD, and BOB
AUSTIN, all in their official
capacities as members of the
Clackamas Board of Commissioners,

   Defendants.

1 - OPINION AND ORDER

**STEPHEN F. ENGLISH**
**KRISTINA J. HOLM**
**TERESA G. JACOBS**
Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
(503) 727-2000

Attorneys for Plaintiffs

**ELLEN F. ROSENBLUM**
Attorney General
**DARSEE STALEY**
**JACQUELINE SADKER KAMINS**
Assistant Attorneys General
Oregon Department of Justice
1515 S.W. Fifth Ave., Suite 410
Portland, OR 97201
(971) 673-1880
(503) 947-4700

Attorneys for Defendant Land Conservation and
Development Commission Members (hereinafter
referred to collectively as State Defendants)

**ALISON KEAN CAMPBELL**
Metro Attorney
**MICHELLE A. BELLIA**
Senior Attorney
Office of Metro Attorney
600 N.E. Grand Ave.
Portland, OR 97232
(503) 797-1526

Attorneys for Defendant Metro Councilors
(hereinafter referred to collectively as
Metro Defendants)

2 - OPINION AND ORDER

**STEPHEN L. MADKOUR**
**ALEXANDER GORDON**
Clackamas County Counsel
2051 Kaen Road
Oregon City, OR 97045
(503) 655-8362

       Attorneys for Defendants Clackamas County and
       Members of the Clackamas County Board
       of Commissioners (hereinafter referred to
       collectively as Clackamas County Defendants)

**BROWN, Judge.**

This matter comes before the Court on Metro Defendants'
Motion (#69) for Judicial Notice; the Motion (#64) to Dismiss of
Metro Defendants joined in part by State Defendants; and the
Motion (#66) to Dismiss of State Defendants joined in part by
Metro Defendants.  The Court heard oral argument on Defendants'
Motions on August 15, 2013, and took the Motions under
advisement.

For the reasons that follow, the Court **GRANTS** Metro
Defendants' Motion (#69) for Judicial Notice, **DENIES** the Motion
(#64) to Dismiss of Metro Defendants joined in part by State
Defendants, and **DENIES** the Motion (#66) to Dismiss of State
Defendants joined in part by Metro Defendants.


<u>**BACKGROUND**</u>

The factual background is set out in detail in the Opinion
and Order (#53) issued by the Court on March 1, 2013, and need

not be repeated here.

In its Opinion and Order (#53), the Court directed
Plaintiffs to file a First Amended Complaint to cure the defects
noted by the Court.  On April 5, 2013, Plaintiffs filed their
First Amended Complaint (#58) in which they assert a claim under
42 U.S.C. § 1983 and allege Defendants violated Plaintiffs'
rights to equal protection under the Fourteenth Amendment to the
United States Constitution when Defendants designated Plaintiffs'
land as rural reserve rather than urban reserve for purposes of
state land-use planning.[1]

Plaintiffs allege Defendants, who are decision-makers in the
regional land-use designation process, intentionally and
irrationally treated Plaintiffs differently from other similarly-
situated landowners when they designated Plaintiffs' land as
rural reserve rather than urban reserve for purposes of future
land-use planning "based on a personal and political
predetermination . . . with a complete disregard for the
statutory framework and applicable legal criteria governing the
designation of the urban and rural reserves, effectively . . .
preclud[ing] the opportunity [for Plaintiffs] to seek approval
for potential urban development for a minimum of the next fifty

---

[1] Plaintiffs initially also asserted a claim for equal
protection under Article I, Section 20, of the Oregon
Constitution.  On July 19, 2013, however, Plaintiffs voluntarily
dismissed that claim without prejudice in a Stipulated Order
(#105).

4 - OPINION AND ORDER

years."  Plaintiffs also allege Defendants "intentionally and irrationally treated Plaintiffs differently from other similarly-situated landowners by singling [them] out" for "personal and political" reasons when they designated Plaintiffs' property as rural reserve.  As a result, Plaintiffs contend their property will remain outside of the Urban Growth Boundary (UGB) for at least fifty years.

In particular, Plaintiffs assert numerous third parties including the Port of Portland, Clackamas County Business Alliance, and Business Oregon (an Oregon state agency) opined during the urban/rural reserve-designation process that Plaintiffs' property is suitable for an urban-reserve designation (*i.e.*, an appropriate site for future urban industrial/employment purposes).  According to Plaintiffs, Defendants disregarded those opinions and the requirements of state law when they, nevertheless, "predetermined" that all land in Clackamas County south of the Willamette River, including Plaintiffs' property, should be designated as rural reserve.  Plaintiffs assert that designation of their property, which prevents any future urban development, was both intentional and irrational and was based on improper reasons and motives.

Plaintiffs seek the following relief:

    1)    A judicial declaration that Defendants'
            policy, practice, and agreements in
            connection with the reserve designation
            system violate Plaintiffs' rights to

equal protection of the laws as
guaranteed by the Fourteenth Amendment
to the Constitution of the United
States;

2)   A judicial declaration that Defendants'
practice and policy of making land use
decisions and reserve designations in a
political manner, without adherence to
the applicable statutes to be in
violation of the Fourteenth Amendment to
the United States Constitution as
applied to Plaintiffs' property;

4)   Issuance of a preliminary and permanent
injunction restraining and enjoining
Defendants, their successors, agents,
and employees, and all persons in active
concert and participation with
Defendants, from implementing,
enforcing, or otherwise acting on the
reserve designations adopted by Metro
and Clackamas County and approved by
LCDC for Plaintiffs' property;

5)   Issuance of a preliminary and permanent
injunction requiring Defendants, their
successors, agents, employees, and all
persons in active concert and
participation with Defendants to
designate the property as urban reserve
or in the alternative, to remove the
rural reserve designation from
Plaintiffs' property and to apply an
urban reserve factors analysis to the
property, including affording Plaintiffs
the opportunity for oral testimony and
written submissions, and holding the
analysis to the same standards as those
applied to properties designated as
urban reserve;

6)   Issuance of a preliminary and permanent
injunction enjoining Defendants from
enforcing any statutes, rules,
agreements, policies, or informal
understandings Defendants may have by
which reserve designations are applied

to Plaintiffs' property; and

7)    Plaintiffs' reasonable attorney fees,
      costs, and disbursements, particularly
      those provided for under 42 U.S.C.
      § 1988.

First Am. Compl. at 22-23.


## PROCEDURAL HISTORY

### I.    Opinion and Order (#53) issued March 1, 2013

On March 1, 2013, the Court entered an Opinion and Order as
to all Defendants' Joint Motion (#16) to Dismiss, or in the
Alternative, to Stay (Abstention) and Clackamas County
Defendants' separate Motion (#14) to Dismiss pursuant to FRCP
12(b)(1), the Principles of Abstention, and FRCP 12(b)(6).

In its Opinion and Order, this Court "declin[ed] to abstain
from litigating Plaintiffs' claim under 42 U.S.C. § 1983 and
Article I, Section 20, of the Oregon Constitution" and directed
Plaintiffs to file an amended complaint to state their two claims
under 42 U.S.C. § 1983 and the Oregon Constitution separately.

In its Opinion and Order the Court also denied Clackamas
County Defendants' Motion to Dismiss.  The Court concluded:

          Plaintiffs allege in their Complaint that
          their property was not treated in the same
          manner as similarly-situated properties
          during the course of the land-use designation
          process, thereby implicating land-use
          decisions made by each of the three groups of
          Defendants named in this case.  Plaintiffs
          allege the land-use decisions made by each of
          the governing bodies that treated Plaintiffs'

> land differently from other similarly-
> situated land was intentional, irrational,
> and made with willful or reckless
> indifference to Plaintiffs and those
> decisions have caused Plaintiffs to incur
> damages and loss.  The Court concludes these
> allegations are sufficient to state a class-
> of-one equal-protection claim under 42 U.S.C.
> § 1983 and Article I, Section 20, of the
> Oregon Constitution.

Opinion and Order (#53) at 16.

In its Motion to Dismiss, Clackamas County asserted (1) Plaintiffs did not sufficiently identify in their Complaint any "similarly-situated" properties that Defendants treated differently during the reserve designation process and (2) Plaintiffs' equal-protection claims were barred by the Fourteenth Amendment because the reserve designation process was the result of Defendants' discretionary decision-making authority.  The Court concluded these defenses turned on factual allegations that contradicted Plaintiffs' allegations and, accordingly, could not be resolved "short of summary judgment." Opin. and Order (#53) at 13-15.

## METRO DEFENDANTS' MOTION FOR JUDICIAL NOTICE

Metro Defendants request the Court to take judicial notice pursuant to Federal Rule of Evidence 201(e) of Exhibit 3 to the Declaration (#68) of Michelle A. Bellia, which is a public record referred to as "Map of Area 4J, with tax lots identified."  As

noted, Plaintiffs' property is in Area 4J.

"[A] court may take judicial notice of 'records and reports of administrative bodies.'" *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)(citing *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953), *abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991).

In support of their Motion (#69), Metro Defendants filed the Declaration (#101) of Karen Scott Lowthian, a Senior Geographic Information Systems Specialist for Metro, in which she states she created Exhibit 3 as part of her work for Metro.  The Court, therefore, concludes Exhibit 3 is a public record of which the Court may take judicial notice.

Accordingly, the Court **GRANTS** Metro Defendants' Motion (#69) for Judicial Notice.

## STANDARDS

To survive a motion to dismiss a complaint must contain sufficient factual matter accepted as true to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  "The plausibility standard is

9 – OPINION AND ORDER

not akin to a 'probability requirement,' but it asks for more
than a sheer possibility that a defendant has acted unlawfully."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550
U.S. at 546).  When a complaint pleads facts that are "merely
consistent with" a defendant's liability, it "stops short of the
line between possibility and plausibility of entitlement to
relief.'"  *Iqbal*, 556 U.S. at 678 (quotations omitted).

The pleading standard under Federal Rule of Civil Procedure
8 "does not require 'detailed factual allegations,' but it
demands more than an unadorned, the-defendant-unlawfully-harmed-
me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550
U.S. at 555).  *See also* Fed. R. Civ. P. 8(a)(2).  "A pleading
that offers 'labels and conclusions' or 'a formulaic recitation
of the elements of a cause of action will not do.'"  *Id.* (citing
*Twombly*, 550 U.S. at 555).  A complaint also does not suffice if
it tenders "naked assertion[s]" devoid of "further factual
enhancement."  *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally
consider only allegations contained in the pleadings, exhibits
attached to the complaint, and matters properly subject to
judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th
Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d
1198, 1204 (C.D. Cal. 2004)).  A court, however, "may consider a
writing referenced in a complaint but not explicitly incorporated

10- OPINION AND ORDER

therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

## **METRO DEFENDANTS' MOTION TO DISMISS**

Metro Defendants move the Court to dismiss Plaintiffs' First Amended Complaint for lack of subject-matter jurisdiction on the grounds that Plaintiffs lack constitutional and prudential standing to seek declaratory and injunctive relief or, in the alternative, to dismiss the individually named Metro Councilors based on absolute legislative immunity and to substitute Metro.

State Defendants join Metro Defendants' Motion as to the standing issue.

## I.   Standing

### A.   Constitutional Standing

A plaintiff must have standing to bring an action in federal court.  To satisfy the standing requirements of Article III of the United States Constitution, a plaintiff must show "'an *injury in fact*'; 'a causal connection between the *injury* and the conduct complained of'; and a conclusion that it is 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Arizona Christian Sch. Tuition Org'n v.*

11- OPINION AND ORDER

*Winn,* 131 S. Ct. 1426, 1437 (2011)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)(emphasis in original)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561. *See also Renee v. Duncan,* 623 F.3d 787, 801 (9th Cir. 2010). The plaintiff must establish standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). The "elements of standing must be supported in the same way as any other matter for which a plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). General factual allegations of injury resulting from the alleged wrongful conduct may suffice at the pleading stage. *Id.*

Here Metro and State Defendants assert Plaintiffs lack constitutional standing to seek declaratory and injunctive relief in this case because Defendants contend any prospective injury is speculative and equitable relief cannot redress Plaintiffs' alleged injury.

## 1. Injury-in-Fact

Defendants argue Plaintiffs cannot establish the "injury-in-fact" element required to have standing. The Court disagrees. As noted, Plaintiffs allege their property was not treated in the same manner as similarly-situated properties; that

12- OPINION AND ORDER

Defendants' land-use decisions that treated Plaintiffs' land
differently from other similarly-situated land were intentional,
irrational, and made with willful or reckless indifference to
Plaintiffs; and Defendants' decisions caused Plaintiffs to incur
damages and loss.  Specifically as to the injury-in-fact element,
Plaintiffs allege Defendants' actions "effectively prohibit[]
Plaintiffs' property from inclusion in the Urban Growth Boundary
(UGB) and preclude[] the opportunity to seek approval for
potential urban development for a minimum of the next fifty
years."  First Am. Compl. at ¶ 1.

The Court concludes Plaintiffs' allegations of ongoing
injury for the next fifty years due to Defendants' actions are
sufficient to satisfy the injury-in-fact element of standing.

### 2.   Redressability

Defendants also contend Plaintiffs cannot establish the
"redressability" element of standing because neither the
declaratory nor injunctive relief that Plaintiffs seek can
redress Plaintiffs' alleged injury.  Defendants argue (1) they
lack the legal authority to change the designation of Plaintiffs'
property, (2) an injunction would not have the effect of changing
the designation of Plaintiffs' property, and (3) Plaintiffs seek
an impermissible mandatory injunction because Plaintiffs have not
suffered the kind of serious harm that warrants such relief.

The Court is not persuaded by Defendants' arguments

that Plaintiffs' claim cannot be redressed because Plaintiffs
seek a mandatory injunction.  Although mandatory injunctions are
"not granted unless extreme or very serious damage will result
and are not issued in doubtful cases or where the injury
complained of is capable of compensation in damages" (*Marlyn
Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,
879 (9th Cir. 2009)), the Court would not necessarily be
prohibited from concluding on a more fully-developed record that
a mandatory injunction is appropriate in this case.  Accordingly,
the Court cannot determine on this Rule 12 Motion that
Plaintiffs' request for a mandatory injunction deprives them of
standing.

        In addition, as explained in more detail below in the
Court's analysis of State Defendants' Motion to Dismiss, the
Court concludes the prospective declaratory relief that
Plaintiffs seek could have the effect of invalidating the
designation of Plaintiffs' property and/or form the basis for
future injunctive relief.  Furthermore, nothing in the current
record supports a conclusion that a change in the designation of
Plaintiffs' property could not be accomplished upon order of the
Court.

**B.   Prudential Standing**

"In addition to the immutable requirements of Article III,
'the federal judiciary has also adhered to a set of prudential

principles that bear on the question of standing.'"  *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 980, 998 (9th Cir. 2012)(citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  "One of these prudential requirements is that '[a] plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.'"  *Id*. (quoting *Bennett*, 520 U.S. at 162).

Metro Defendants and State Defendants contend Plaintiffs lack prudential standing to bring their claim because Plaintiffs do not fall within the "zone of interest" protected by the equal-protection clause.

The Court notes this argument was previously raised by Clackamas County Defendants in their Motion (#14) to Dismiss, and the Court denied the Motion on the basis that Plaintiffs had adequately pled a class-of-one equal-protection claim.  The Court concluded:

> The foundation for Clackamas County Defendants' argument [on the issue of standing] is that Plaintiffs' class-of-one equal-protection claim is not capable of being addressed by this Court.  As explained above, however, the Court has concluded Plaintiffs have adequately pled a class-of-one equal-protection claim.  Accordingly, the Court **DENIES** Clackamas County Defendants' Motion (#14) to Dismiss.

Opin. and Order (#53) at 21.  The Court finds the same reasoning applies to the arguments of Metro Defendants and State Defendants

15- OPINION AND ORDER

here.

Accordingly, the Court adheres to its prior ruling on this issue.

## II.  Legislative Immunity and Substitution of Metro for Individual Metro Councilor Defendants

Metro Defendants contend the nine individually-named current and former Metro Councilor Defendants are protected by legislative immunity, and, accordingly, the Court should dismiss them from this action and substitute Metro in their place.

"Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1988). "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Id*. at 54 (quotation omitted). "'Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.'" *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003)(quoting *Bogan*, 523 U.S. at 49). "Absolute immunity applies only when legislators act in their legislative capacities, not in their administrative or executive capacities." *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1220 (9th Cir. 1996).

To ascertain whether an action is legislative in nature, a court weighs the following factors:

> (1) whether the act involves *ad hoc* decisionmaking or the formulation of policy; (2) whether the act applies to a few

> individuals or to the public at large; [and]
> (3) whether the act is formally legislative
> in nature and . . . bears all the hallmarks
> of traditional legislation.

*Kaahumanu*, 315 F.3d at 1220 (internal quotations and citations

omitted).  The burden of proof to show absolute immunity rests

with the individual who asserts it.  *Id*.

Metro Defendants argue they are entitled to absolute

immunity because they were acting in their legislative capacity

when they adopted Metro Ordinance No. 10-1238A, which was a

formal legislative action.  As Plaintiffs' point out, however,

the action of Metro Defendants that is challenged by Plaintiffs

is not the adoption of Metro Ordinance No. 10-1238A, but instead

Metro Defendants' alleged ratification of Clackamas County

Defendants' "irrational and intentional designation of

[Plaintiffs'] property as rural reserve" and intentional

treatment of "other similarly situated landowners differently

. . . without any rational basis."  Thus, Metro Defendants'

Motion on this issue appears to be misplaced and, in any event,

this is a fact-based defense that contradicts Plaintiffs'

allegations and, therefore, cannot be resolved on Metro

Defendants' present Motion.

In summary, the Court **DENIES** the Motion (#64) to Dismiss of

Metro joined in part by State Defendants.

17- OPINION AND ORDER

**STATE DEFENDANTS' MOTION TO DISMISS**

State Defendants move to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7) on the grounds that Plaintiffs (1) have failed to state a claim for relief under the Equal Protection Clause; (2) have failed to join Washington County, Multnomah County, and other property owners who are necessary parties; and (3) cannot obtain the retrospective declaratory relief they seek.

Metro Defendants join State Defendants' Motion on parts (1) and (2) as identified above.

## I.  Failure to State an Equal-Protection Claim

### A.  Standards

Under 42 U.S.C. § 1982 "an equal protection claim can in some circumstances be sustained even if the [plaintiffs have] not alleged class-based discrimination, but instead [claim they have] been irrationally singled out as a so-called 'class of one.'" *Gerhart v. Lake County, Montana,* 637 F.3d 1013, 1021 (9th Cir. 2011)(quoting *Engquist v. Or. Dep't of Agric*., 553 U.S. 591, 601 (2008)(citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)(*per curiam*)).  A class-of-one action may be maintained if a regulation is "*applied in a singular way* to particular citizens."  *Engquist,* 553 U.S. at 592 (emphasis added).

The Oregon Supreme Court also has recognized a "'class of one' can support [an Article I, Section 20,] equal protection

claim if [a] plaintiff alleges treatment different from others and no rational basis for difference in treatment." *In re Conduct of Gatti*, 330 Or. 517, 534 (2000).  "To succeed on a 'class of one' claim," the plaintiff must plead the defendants "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart*, 637 F.3d at 1022 (*citing Willowbrook*, 528 U.S. at 564).  An equal-protection claim based on a class-of-one is not appropriate when the agency action involves discretionary decision-making and there is not any "pattern of generally exercising the discretion in a particular manner while treating one individual differently *and* detrimentally." *Towery v. Brewer*, 672 F.3d 650, 660-61 (9th Cir. 2012)(emphasis in original).

Although a plaintiff must plead the defendant's decision was intentional, the plaintiff need not show the defendants were "motivated by subjective ill will." *Willowbrook*, 528 U.S. at 565.  *See also Gerhart,* 637 F.3d at 1022.  "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act.'" *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)(quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).

**B.   Differential Treatment**

State Defendants and Metro Defendants contend Plaintiffs

have not adequately pled they are a "class-of-one" because
(1) Plaintiffs merely allege the decision to designate their
property as rural "was based on a personal and political
predetermination to not allow any development south of the
Willamette River in Clackamas County" and (2) Plaintiffs do not
explicitly allege they were treated differently from any other
landowner south of the Willamette River or were "singled out as a
so-called 'class of one.'" *See Engquist,* 559 U.S. at 601
(citations omitted).  In addition, Defendants point out that
Plaintiffs, in fact, allege in their First Amended Complaint that
they were treated identically to all landowners who owned
property south of the Willamette River in that none of that land
was designated as urban reserve.  More specifically, Defendants
contend Plaintiffs were treated the same as all owners of land in
the designated area known as "4J" in which Plaintiff's property
is located because all of the land in 4J was designated as rural.

    As noted, however, Plaintiff's First Amended Complaint
contains a section entitled "Examples of Similarly Situated
Properties Designated as Urban" in which Plaintiffs list five
different properties that they contend are "similarly- situated"
but which received urban reserve designations.  These allegations
regarding allegedly similarly-situated properties were also
included in Plaintiffs' original Complaint.  Based on these
allegations, the Court concluded in its previous Opinion and

Order that Plaintiffs' assertions that their property was not treated in the same manner as similarly-situated properties during the course of the land-use designation process were sufficient to state a class-of-one equal-protection claim under 42 U.S.C. § 1983.  Opin. and Order (#53) at 16.  Accordingly, the Court's prior analysis and ruling as to the sufficiency of Plaintiffs' allegations regarding similarly-situated properties applies here also.  Furthermore, Defendants' contention as to which landowners Plaintiffs should be compared to for purposes of determining who is "similarly-situated" is a fact-based defense that cannot be resolved on a motion to dismiss because that would require the Court to consider facts outside of "the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *See Swartz v. KPMG LLP*, 476 F.3d at 763.

Defendants also assert Plaintiffs' claim fails because § 1983 protects individuals rather than property; *i.e.,* Plaintiffs allege Defendants treated Plaintiffs' *land* differently from similarly-situated *land* rather than treating Plaintiffs differently than other property owners.  The Court does not, however, read so narrowly the authorities on which State Defendants rely.  In the cases cited by State Defendants to support their position, each of the plaintiffs contended the defendants applied different standards to the plaintiffs'

21- OPINION AND ORDER

properties than to other similarly-situated properties.  *See,
e.g., Gerhart*, 637 F.3d at 1014-15 (requiring the plaintiff to
apply for a permit for a road approach to his property while
other property owners were not required to get a permit);
*Willowbrook*, 528 U.S. at 564 (requiring the plaintiff to have a
33-foot easement to connect to the municipal water supply while
other property owners were only required to have a 15-foot
easement).  Like the plaintiffs in these cases, Plaintiffs here
contend Defendants applied statutory and administrative criteria
to other, similarly-situated property that was different from the
criteria they applied to Plaintiffs' property, which resulted in
disparate treatment "to specifically preclude any future urban
development of Plaintiffs' property."

In any event, the Court concludes Defendants' argument is a
matter of semantics because how Defendants allegedly "treated
Plaintiffs' land" is, in effect, how Defendants treated
Plaintiffs as the owners of the land.

Finally, Defendants contend Plaintiffs, in effect, include
in their First Amended Complaint a "rational basis" for
Defendants' designation of Plaintiffs' property as rural reserve:
*i.e.*, certain Defendants desired to designate all of the land
south of the Willamette River as rural.  Defendants contend if
Plaintiffs' allegation is accepted as true, it would in and of
itself constitute a rational basis for Defendants' designation.

As stated by the Court in its previous Opinion and Order, however, whether a rational basis exists for Defendants' actions is a fact-based defense that cannot be resolved on a motion to dismiss, and, therefore, the Court finds Plaintiffs should be permitted to conduct discovery on this issue "to obtain evidence sufficient to establish Defendants' motivations for the challenged land-use decision and thereby to prove Plaintiffs' § 1983 constitutional claim."  Opin. and Order (#53) at 16.

## II.  Failure to Join Necessary Parties

State Defendants and Metro Defendants contend Plaintiffs failed to join Washington County, Multnomah County, property owners in Area 4J, and potentially all property owners subject to the Metro Urban and Rural Reserves Decision as necessary parties. Defendants assert the Court, therefore, should dismiss Plaintiff's claims.

### A.  Standards

Federal Rule of Civil Procedure Rule 19(b) provides:  "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

When determining whether an absent party is a required party within the meaning of Rule 19 and, accordingly, whether the action can proceed in that party's absence, the court must first

23- OPINION AND ORDER

consider whether the nonparty should be joined under Rule 19(a).

*EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010).

Rule 19(a) provides:

> (a)  Persons Required to Be Joined if
> Feasible.
>
> > (1) Required Party.  A person who is
> > subject to service of process and whose
> > joinder will not deprive the court of
> > subject-matter jurisdiction must be
> > joined as a party if:
> >
> > > (A)  in that person's absence, the
> > > court cannot accord complete relief
> > > among existing parties; or
> > >
> > > (B)  that person claims an interest
> > > relating to the subject of the
> > > action and is so situated that
> > > disposing of the action in the
> > > person's absence may:
> > >
> > > > (I)  as a practical matter
> > > > impair or impede the person's
> > > > ability to protect the
> > > > interest; or
> > > >
> > > > (ii)  leave an existing party
> > > > subject to a substantial risk
> > > > of incurring double, multiple,
> > > > or otherwise inconsistent
> > > > obligations because of the
> > > > interest.

If the court concludes the nonparty should be joined

pursuant to Rule 19(a), the nonparty is considered a required

party and the court must next determine whether joinder is

feasible.  *Peabody,* 610 F.3d at 1078.  If joinder is not

feasible, the court must determine whether the action can proceed

without the absent party or whether that party is a required

24- OPINION AND ORDER

party.  *Id.*

When a person is required to join under Rule 19(b) but
cannot be joined, the action should be dismissed if the nonparty
"not only [has] an interest in the controversy, but [has] an
interest of such a nature that a final decree cannot be made
without either affecting that interest, or leaving the
controversy in such a condition that its final termination may be
wholly inconsistent with equity and good conscience."  *Id.*
(quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)).

   **B.   Discussion**

Defendants contend Plaintiffs' request for an injunction
requiring Defendants "to designate the property as urban reserve,
or, in the alternative, to remove the rural reserve designation
from Plaintiffs' property and apply an urban reserve factors
analysis to the property" triggers the need for additional
parties to this action.  Defendants contend Washington and
Multnomah Counties are necessary parties because if this Court
overturns or enjoins enforcement of the Metro Urban and Rural
Reserves Decision (which was adopted by the Counties pursuant to
intergovernmental agreements (IGAs) as required by Oregon Revised
Statute § 195.145(1)), the Counties and the land located within
them would be "in jeopardy."  Defendants further contend neither
Metro nor any one county may act alone, and, therefore, Defendant
Clackamas County does not have the unilateral power to remove the

rural reserve designation on Plaintiffs' property because state law requires collaboration among all three counties and Metro to designate urban and rural reserves as part of one regional framework. *See* Or. Rev. Stat. §§ 195.145, 195.143(2).  In addition, Defendants argue Plaintiffs' requested relief would affect hundreds of other landowners, including those who own land in Area 4J, and these individuals are also necessary parties because they have an interest in the outcome of a lawsuit that may affect the reserve designation applicable to their land.

The Court is not persuaded by Defendants' argument that the counties and the land located within them would necessarily be affected if the Court were to order the relief Plaintiffs seek; *i.e.,* a declaration that the policies and practices leading to the designation of Plaintiffs' property are unconstitutional and/or issuance of an injunction removing the rural reserve designation.  Defendants contend the relief that Plaintiffs seek is impossible to provide in any event because the cooperative nature of the designation process does not allow Defendants to undo the designation of Plaintiffs' property.

Although the Court understands Defendants' argument that the Counties are supposed to act cooperatively with Metro and the Land Conservation and Development Commission to designate property in accordance with state law governing the designation process, Defendants have not provided any authority to support

their position that the individualized relief sought by
Plaintiffs is legally impermissible upon Court order.
Accordingly, the Court is not persuaded the relief sought by
Plaintiffs as to their Clackamas County property would put
Multnomah and Washington Counties or other landowners "in
jeopardy," and, therefore, the Court concludes Defendants have
not adequately shown that the Counties or other landowners have
an interest sufficient to require them to be necessary parties.

**III. Relief Sought by Plaintiffs**

State Defendants contend Plaintiffs' claims fail on the
grounds that Plaintiffs cannot obtain the declaratory relief they
seek because (1) the Eleventh Amendment bars suits against State
Defendants and (2) such relief is retrospective and would not
serve a useful purpose.

**A.    Eleventh Amendment Immunity**

State Defendants contend declaratory relief is not available
against them because the Eleventh Amendment bars suits against a
state in federal court.

"The Eleventh Amendment grants to states a sovereign
immunity from suit that, when invoked, bars adjudication of a
dispute in federal court.  Though not jurisdictional in the
traditional sense, whether a plaintiff's claims are barred by the
Eleventh Amendment is a threshold issue." *Agua Caliente Band of
Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).

The exception to this rule is when the relief sought is prospective as opposed to retrospective. The Ninth Circuit has long held that "[u]nder the principle of *Ex Parte Young*, private individuals may sue state officials for prospective relief against ongoing violations of federal law" the Eleventh Amendment does not generally bar declaratory judgment actions against state officers." *Nat'l Audubon Soc'y v. Davis,* 307 F.3d 835, 847 (9th Cir. 2002).

In *Hardin* the court explained the *Young* exception:

> Since the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law. The *Young* doctrine is premised on the fiction that such a suit is not an action against a "State" and is therefore not subject to the sovereign immunity bar. The *Young* doctrine strikes a delicate balance by ensuring on the one hand that states enjoy the sovereign immunity preserved for them by the Eleventh Amendment while, on the other hand, "giving recognition to the need to prevent violations of federal law."

223 F.3d at 1045 (citing *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

In *Davis* the plaintiffs sought a declaration that a California law that banned the use of certain traps to kill or to capture wildlife was preempted by the Endangered Species Act and Migratory Bird Treaty Act and could not be enforced by state

28- OPINION AND ORDER

officials.  The Ninth Circuit concluded the plaintiffs' claims
were not barred by the Eleventh Amendment because the declaratory
relief sought had "purely prospective effect, either of its own
force or as a basis for future injunctive relief." *Davis*, 307
F.3d at 848.

Here Plaintiffs contend the designation of their property as
rural reserve has and will continue to cause harm to Plaintiffs
for the next fifty years, and, therefore, they seek a declaration
that the policies and practices that led to this designation are
unconstitutional.

In light of Plaintiffs' allegations of an ongoing violation
and continuing harm, the Court concludes the declaratory relief
that Plaintiffs seek is similar to that sought by the plaintiffs
in *Davis*; *i.e.*, it is prospective in nature and could have the
effect of invalidating the designation of Plaintiffs' property
and/or form the basis for future injunctive relief.  Thus, on
this record the Court cannot conclude Plaintiffs' claims are
barred by the Eleventh Amendment.

### B.    Utility of Declaratory Relief

The Ninth Circuit has recognized two criteria for
determining whether declaratory relief is appropriate in a given
case:

> (1)  when the judgment will serve a useful
>      purpose in clarifying and settling the
>      legal relations in issue, and

                     (2)  where it will terminate and afford
                          relief from the uncertainty, insecurity,
                          and controversy giving rise to the
                          proceeding.

*Cent. Montana Elect. Power Coop., Inc. v. Admin of Bonneville*

*Power Admin.*, 840 F.2d 1472, 1479 (9th Cir. 1988)(citing

*McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 343

(9th Cir. 1966)).

     As noted, Plaintiffs seek declaratory relief on the ground
that certain policies, practices, and agreements violate
Plaintiffs' rights to equal protection.  Defendants, in turn,
contend the declaratory relief that Plaintiffs seek is
retrospective and would not serve a useful purpose because the
reserve designation of Plaintiff's property was a single, stand-
alone decision rather than a policy or practice.  Moreover, State
Defendants request the Court to strike the "policies and
practices" portion of Plaintiffs' First Amended Complaint because
Plaintiffs have failed to identify any such policies or
practices.  Defendants further contend the declaratory relief
that Plaintiffs seek is broader than the subject of this
litigation (*i.e.*, the specific designation of Plaintiff's
property) and could "have the practical effect of declaring the
entire urban and rural reserve process unconstitutional."

     The Court notes Plaintiffs' claim for declaratory relief is
broadly stated and is not clear with respect to the particular
"policies and practices" at issue.  As noted, however, the

30- OPINION AND ORDER

declaratory relief that Plaintiffs seek is, nevertheless, prospective in nature and could have the effect of invalidating the designation of Plaintiffs' property and/or form the basis for future injunctive relief.  Thus, on this record the Court cannot conclude the relief sought by Plaintiffs would not serve a useful purpose.

Accordingly, the Court **DENIES** the Motion (#66) to Dismiss of State Defendants joined in part by Metro Defendants.

## CONCLUSION

For these reasons, the Court **GRANTS** Metro Defendants' Motion (#69) for Judicial Notice; **DENIES** the Motion (#64) to Dismiss of Metro Defendants joined in part by State Defendants; and **DENIES** the Motion (#66) to Dismiss of State Defendants joined in part by Metro Defendants.

IT IS SO ORDERED.

DATED this 13th day of November, 2013.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge