IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EXIT 282A DEVELOPMENT COMPANY,            3:12-cv-00939-BR
LLC, and LFGC, LLC,

                                          OPINION AND ORDER

          Plaintiffs,

v.

BARTON EBERWEIN, in his
official capacity as a member
of the Land Conservation &
Development Commission; GREG
MACPHERSON, in his official
capacity as a member of the
Land Conservation & Development
Commission; TOM HUGHES, in his
official capacity as a Metro
Councilor; SHIRLEY CRADDICK, in
her official capacity as a Metro
Councilor; CARLOTTA COLLETTE, in
her official capacity as a Metro
Councilor; KATHRYN HARRINGTON,
in her official capacity as a
Metro Councilor; PAUL SAVAS, in
his official capacity as a
member of the Clackamas County
Board of Commissioners; JIM
BERNARD, in his official capacity
as a member of the Clackamas
County Board of Commissioners;
CLACKAMAS COUNTY; JERRY LIDZ, in

his official capacity as a member
of the Land Conservation &
Development Commission; CATHERINE
MORROW, in her official capacity
as a member of the Land
Conservation & Development
Commission; SHERMAN LAMB, in his
official capacity as a member of
the Land Conservation &
Development Commission; ROBIN
MCARTHUR, in her official
capacity as a member of the Land
Conservation & Development
Commission; MELISSA CRIBBINS, in
her official capacity as a member
of the Land Conservation &
Development Commission; CRAIG
DIRKSEN, in his official capacity
as a Metro Councilor; SAM CHASE,
in his official capacity as a
Metro Councilor; BOB STACEY, in
his official capacity as a Metro
Councilor; JOHN LUDLOW, in his
official capacity as a member of
the Clackamas County Board of
Commissioners; and MARTHA SCHRADER,
in her official capacity as a
member of the Clackamas County
Board of Commissioners,

       Defendants.


STEPHEN F. ENGLISH
KRISTINA J. HOLM
TERESA G. JACOBS
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
(503) 727-2003

       Attorneys for Plaintiffs

**ELLEN F. ROSENBLUM**
Oregon Attorney General
**DARSEE STALEY**
**JACQUELINE SADKER KAMINS**
Assistant Attorneys General
Oregon Department of Justice
1515 S.W. Fifth Avenue, Suite 410
Portland, OR 97201
(971) 673-1880

       Attorneys for Defendants Barton Eberwein, Greg
       MacPherson, Jerry Lidz, Catherine Morrow, Sherman Lamb,
       Robin McArthur, and Melissa Cribbins

**MATTHEW J. KALMANSON**
**KAREN M. O'KASEY**
Hart Wagner, LLP
1000 S.W. Broadway, Suite 2000
Portland, OR 97205
(503) 222-4499

**MICHELLE A. BELLIA**
Office of Metro Attorney
600 N.E. Grand Avenue
Portland, OR 97232
(503) 797-1526

       Attorneys for Defendants Tom Hughes, Shirley Craddick,
       Carlotta Collette, Kathryn Harrington, Craig Dirksen,
       Sam Chase, and Bob Stacey

**STEPHEN LEWIS MADKOUR**
**ALEXANDER GORDON**
Clackamas County Counsel
2051 Kaen Road, 4th Floor
Oregon City, OR 97045
(503) 742-5392

       Attorneys for Defendants Paul Savas, Jim Bernard,
       Clackamas County, John Ludlow, and Martha Schrader

**BROWN, Judge.**

    This matter comes before the Court on the following Motions:

    1.    Motion (#136) for Summary Judgment filed by Defendants

3 - OPINION AND ORDER

Paul Savas, Jim Bernard, John Ludlow, Martha Schrader, and Clackamas County (collectively referred to herein as Clackamas County Defendants);

2.    Motion (#149) for Judgment on the Pleadings filed by Defendants Melissa Cribbins, Barton Eberwein, Sherman Lamb, Jerry Lidz, Greg MacPherson, and Catherine Morrow (collectively referred to herein as State Defendants); and

3.    Motion (#150) for Judgment on the Pleadings filed by Defendants Sam Chase, Carlotta Collette, Shirley Craddick, Craig Dirksen, Kathryn Harrington, Tom Hughes, and Bob Stacey (collectively referred to herein as Metro Defendants).

As noted, State Defendants and Metro Defendants each filed a Motion (#149, #150) for Judgment on the Pleadings. Through the course of litigating these Motions, however, the parties have relied extensively on factual material outside of Plaintiffs' pleadings. Accordingly, on July 21, 2015, the Court **CONVERTED** State Defendants' Motion (#149) for Judgment on the Pleadings and Metro Defendants' Motion (#150) for Judgment on the Pleadings into Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d) and gave the parties an opportunity to submit additional materials appropriate for summary-judgment motions.

For the reasons that follow, the Court **GRANTS** the Clackamas County Defendants' Motion for Summary Judgment, the State

Defendants' Motion for Summary Judgment, and the Metro
Defendants' Motion for Summary Judgment and **DISMISSES** this matter
**without prejudice**.

The Court notes Plaintiffs conceded in their response to the
State Defendants' Motion that they do not have any ripe claims
against the State Defendants because there is not presently any
final action from the Land Conservation and Development
Commission (LCDC) that affects Plaintiffs' property.
Accordingly, on May 11, 2015, Plaintiffs and State Defendants
filed a Joint Stipulation (#158) to Entry of Judgment of
Dismissal of State Defendants to which Clackamas County
Defendants objected.  Because the Court grants Defendants'
respective Motions for Summary Judgment, however, the Court
concludes the Joint Stipulation entered into by Plaintiffs and
State Defendants is **moot**.


## BACKGROUND

The following facts are undisputed:

Plaintiffs raise equal-protection challenges under the
United States Constitution and the Oregon Constitution to
Defendants' designation as a "rural reserve" for long-term,
land-use planning purposes of an area in Clackamas County that
includes Plaintiffs' land.

Metro is a metropolitan service district responsible for,

among other services, coordinating land-use planning in the Portland metropolitan area. Metro serves an area covering portions of Multnomah County, Washington County, and Clackamas County (collectively referred to herein as the Counties). Metro is responsible for certain land-use planning regulations, including the adoption of an urban-growth boundary (UGB) around the Portland metropolitan area that sets the outer boundary for urban development.

The Oregon State Legislature, however, has provided for a process whereby Metro and the Counties may, under certain circumstances, designate some areas outside of the UGB as "urban reserves" in which greater development may be permitted or "rural reserves" in which additional development is prohibited for a period of up to 50 years. As noted, Plaintiffs bring federal and Oregon constitutional challenges to the designation by Metro and the Counties of an area that includes Plaintiffs' land as a "rural reserve."

## I.   Statutory Substantive Standards

In 2007 the Oregon State Legislature authorized Metro and the Counties jointly and concurrently to designate lands outside of Portland's UGB as urban reserves or rural reserves.

Metro and the Counties were to designate urban reserves "[t]o ensure that the supply of land available for urbanization is maintained." Or. Rev. Stat. § 195.145(1). The maximum

allowable amount of urban reserves is determined according to the UGB planning period. The UGB must be set in a way that is sufficient to accommodate housing needs for 20 years. *See* Or. Rev. Stat. § 197.296(2). Urban reserves also "must be planned to accommodate population and employment growth for at least 20 years, and not more than 30 years" after the 20-year UGB planning period. Or. Rev. Stat. § 195.145(4). In effect, therefore, Metro and the Counties must designate enough urban reserves to accommodate projected population and employment growth for at least the next 40 years but no more than 50 years. When determining the land to designate as an urban reserve, Metro and the Counties are to consider factors including, but not limited to, whether the land

    (a)   Can be developed at urban densities in a way that makes efficient use of existing and future public infrastructure investments;

    (b)   Includes sufficient development capacity to support a healthy urban economy;

    (c)   Can be served by public schools and other urban-level public facilities and services efficiently and cost-effectively by appropriate and financially capable service providers;

    (d)   Can be designed to be walkable and served by a well-connected system of streets by appropriate service providers;

    (e)   Can be designed to preserve and enhance natural ecological systems; and

    (f)   Includes sufficient land suitable for a range of housing types.

Or. Rev. Stat. § 195.145(5).

Rural reserves are to be designated "to provide long-term protection to the agricultural industry." Or. Rev. Stat. § 195.141(3). Unlike urban reserves, the Legislature did not place any limitation on the amount of rural reserves that Metro and the Counties can designate. In designating rural reserves, Metro and the Counties are to consider factors including, but not limited to, whether the land

(a) Is situated in an area that is otherwise potentially subject to urbanization during the period described in subsection (2)(b) of this section, as indicated by proximity to the urban growth boundary and to properties with fair market values that significantly exceed agricultural values;

(b) Is capable of sustaining long-term agricultural operations;

(c) Has suitable soils and available water where needed to sustain long-term agricultural operations; and

(d) Is suitable to sustain long-term agricultural operations, taking into account:

(A) The existence of a large block of agricultural or other resource land with a concentration or cluster of farms;

(B) The adjacent land use pattern, including its location in relation to adjacent nonfarm uses and the existence of buffers between agricultural operations and nonfarm uses;

(C) The agricultural land use pattern, including parcelization, tenure and ownership patterns; and

(D) The sufficiency of agricultural infrastructure in the area.

Or. Rev. Stat. § 195.141(3). Land designated as a rural reserve

cannot be included within a future expansion of the UGB or redesignated as an urban reserve during the urban-reserve planning period. Or. Rev. Stat. § 195.141(2). Rural reserves, therefore, are "essentially not subject to urban development for up to a total period of 40 to 50 years." *Barkers Five, LLC v. Land Conservation and Dev. Comm'n*, 261 Or. App. 259, 274 (2014).

## II. Regulatory Substantive Standards

In addition to the substantive standards mandated by statute, the Oregon Legislature gave the LCDC rule-making authority to establish a "process and criteria for designating" urban and rural reserves. *See* Or. Rev. Stat. §§ 195.141(4), 195.145(6). LCDC rules define the purpose of the urban- and rural-reserve designation process:

> The objective of this division is a balance in the designation of urban and rural reserves that, in its entirety, best achieves livable communities, the viability and vitality of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents.

Or. Admin. R. 660-027-0005(2).

The LCDC rules setting out the substantive criteria that govern the designation of urban reserves incorporate the statutory factors from § 195.145(5) in addition to the following factors:

> (7) Can be developed in a way that preserves important natural landscape features included in urban reserves; and

> (8) Can be designed to avoid or minimize adverse
> effects on farm and forest practices, and adverse
> effects on important natural landscape features, on
> nearby land including land designated as rural
> reserves.

Or. Admin. R. 660-027-0050. LCDC rules also incorporate the cap

that Oregon Revised Statute § 195.145(4) places on the amount of

land that can be designated as urban reserves and, in addition,

provide:

> Metro shall specify the particular number of years for
> which the urban reserves are intended to provide a
> supply of land, based on the estimated land supply
> necessary for urban population and employment growth in
> the Metro area for that number of years. The 20 to
> 30-year supply of land specified in this rule shall
> consist of the combined total supply provided by all
> lands designated for urban reserves in all counties
> that have executed an intergovernmental agreement with
> Metro in accordance with OAR 660-027-0030.

Or. Admin. R. 660-027-0040.

The LCDC rules setting out the substantive criteria that

govern the designation of rural reserves incorporate the

statutory factors from § 195.141(3), extend those factors to

apply to the timber industry in addition to agriculture, and add

a set of factors that permit the designation of land as a rural

reserve "to protect natural landscape features." Or. Admin. R.

660-027-0060(2), (3). Although Metro and the Counties are

generally required to apply the statutory and regulatory factors

when determining whether any specific area will be designated as

a rural reserve, the LCDC rules contain two exceptions to this

requirement: (1) Under Oregon Administrative Rule 660-027-

0060(4), Metro and the Counties may "deem that Foundation Agricultural Lands or Important Agricultural Lands[1] within three miles of a UGB qualify for designation as rural reserves . . . without further explanation" and (2) under Oregon Administrative Rule 660-027-0040(11) to the extent that the Counties and Metro designate Foundation Agricultural Land as an urban reserve, Metro and the Counties must provide a specific statement of reasons to explain why that land was chosen for designation as an urban reserve and other land was not.

## III. Procedural Framework and History

"The designation of urban and rural reserves occurs through agreements between Metro and a county." *Barkers Five*, 261 Or. App. at 275. *See also* Or. Rev. Stat. §§ 195.141(1), 195.143(2), 195.145(1)(b). Accordingly, the urban- and rural-reserve designations are made through intergovernmental agreements between Metro and the individual County.

Between May 13, 2010, and June 15, 2010, Metro and the Counties made their respective urban- and rural-reserve designation decisions and applied the statutory and regulatory factors on an area-wide basis; *i.e.*, rather than apply the factors and make designation decisions on a property-by-property

---

[1] Foundation Agricultural Lands and Important Agricultural Lands are those lands previously designated as such by the Oregon Department of Agriculture. *See* Or. Admin. R. 660-027-0010(1), (2).

basis, Metro and the Counties subdivided the Portland
metropolitan map into a rough grid of "areas" that each contained
multiple properties and then made the designation decisions on an
area-wide basis.

On June 23, 2010, Metro and the Counties submitted to LCDC
their joint and concurrent decision in which Metro and the
Counties designated 28,615 acres as urban reserves and 266,954
acres as rural reserves to achieve Metro-wide land-use planning
goals through 2060.

Pursuant to Oregon Administrative Rule 660-027-0080(4), LCDC
was required to review the submission of Metro and the Counties
for

> (a)  Compliance with the applicable statewide planning
>      goals.  Under ORS 197.747 "compliance with the
>      goals" means the submittal on the whole conforms
>      with the purposes of the goals and any failure to
>      meet individual goal requirements is technical or
>      minor in nature.  To determine compliance with the
>      Goal 2 requirement for an adequate factual base,
>      the Commission shall consider whether the
>      submittal is supported by substantial evidence.
>      Under ORS 183.482(8)©, substantial evidence exists
>      to support a finding of fact when the record,
>      viewed as a whole, would permit a reasonable
>      person to make that finding;
>
> (b)  Compliance with applicable administrative rules,
>      including but not limited to the objective
>      provided in OAR 660-027-0005(2) and the urban and
>      rural reserve designation standards provided in
>      OAR 660-027-0040; and
>
> (c)  Consideration of the factors in OAR 660-027-0050
>      or 660-027-0060, whichever are applicable.

In October 2010 LCDC held a hearing concerning the designations

of Metro and the Counties.  At that hearing LCDC approved the designations as to all but two areas in Washington County and remanded those designations to Metro and Washington County for further consideration.

On May 13, 2011, Metro and the Counties re-submitted their urban- and rural-reserve designations to LCDC after Metro and Washington County "'adjusted the urban and rural reserve designations in Washington County' in several ways," which resulted in a decrease of 299 acres designated as urban reserves, a decrease of 120 acres of rural reserves, and an increase of 419 acres in "undesignated" lands.  *See Barkers Five*, 261 Or. App. at 283-84.  As a result, Metro and the Counties designated a total of 28,256 acres as urban reserves and 266,628 acres as rural reserves.

On August 18 and 19, 2011, the LCDC conducted a hearing at which it considered 14 objections to the proposed designations.  On August 19, 2011, at the conclusion of that hearing, the LCDC voted to acknowledge in their entirety the urban- and rural-reserve designations submitted by Metro and the Counties and issued a 156-page Acknowledgment Order to memorialize its decision.  *See* Or. Rev. Stat. § 197.626(2).

Several objectors, including Plaintiffs, appealed the LCDC's Acknowledgment Order to the Oregon Court of Appeals pursuant to Oregon Revised Statute § 197.626(3).  The Oregon Court of Appeals

affirmed part of the LCDC's Acknowledgment Order (and, thus, the designations of Metro and the Counties), but the court concluded the LCDC erred in the following four respects:

(1) By determining it had the authority to affirm a decision of Metro and the Counties on the ground that the evidence "clearly supports" their decision even though the local government's findings were inadequate.

(2) By approving the legally impermissible application of the rural-reserve factors to agricultural land in Washington County.  Accordingly, the Court of Appeals ordered LCDC to remand Washington County's reserves designation "as a whole."

(3) By approving the legally insufficient rural-reserve designation of Area 9D in Multnomah County. Accordingly, the Court of Appeals ordered LCDC to remand for reconsideration of the designation of Area 9D and further ordered LCDC to "determine the effect of that error on the designations of reserves in Multnomah County in its entirety."

(4) By failing to adequately review the designations of Areas 4A through 4D in Clackamas County as urban reserves.  The Court of Appeals ordered LCDC to "meaningfully explain why . . . the designation of [Areas 4A through 4D] as urban reserves is supported by

substantial evidence."

*Barkers Five*, 261 Or. App. at 363-64.

In its "Remand Order" dated March 16, 2015, the LCDC
ordered:

> The Commission incorporates by reference those findings
> and conclusions of Compliance Acknowledgment Order
> 12-ACK-001819 concerning the application of urban and
> rural reserve factors to designate certain areas as
> either urban or rural reserves in Clackamas and
> Multnomah counties, except those findings and
> conclusions related to the designations of Rural
> Reserve Area 9D and Urban Reserve Areas 4A, 4B, 4C, and
> 4D. Accordingly, Commission [*sic*] remands Rural
> Reserve Area 9D to Multnomah County and Metro and Urban
> Reserve Areas 4A, 4B, 4C, and 4D to Metro and Clackamas
> County for further action consistent with the
> principles expressed in [*Barker's Five*].
>
> Before final acknowledgment, the Commission will review
> a resubmittal of the Metro Region urban and rural
> reserves designations for acknowledgement of compliance
> with ORS 195.141 and 195.145, OAR chapter 660, division
> 27, the applicable statewide planning goals, and all
> other applicable rules of the Commission.

Although the LCDC did not specifically order Metro and Clackamas

County to reconsider designations other than Areas 4A, 4B, 4C,

and 4D, it did not preclude Metro and Clackamas County from doing

so. The LCDC also incorporated into the Remand Order the

findings from the Acknowledgment Order that were not reversed by

the Court of Appeals.

## IV. Plaintiffs' Property

Plaintiffs own property in Area 4J, a portion of Clackamas

County that has been designated as a rural reserve under the

May 13, 2011, urban- and rural-reserve submission to LCDC. Area

15- OPINION AND ORDER

4J covers an area south and east of Wilsonville.  Plaintiffs'
property is south of the City of Wilsonville and the Willamette
River.

Both LCDC and the Oregon Court of Appeals affirmed the
designation of Area 4J as a rural reserve over Plaintiffs'
objection.  Accordingly, although Metro and Clackamas County may
still reconsider their designation of Area 4J, both LCDC and the
Oregon Court of Appeals have determined the designation of Area
4J in isolation is lawful.

Since remand Plaintiffs and Clackamas County have discussed
proposing legislation that would allow Metro and Clackamas County
to revise urban- and rural-reserves designations to add
additional land suitable for development.  On June 3, 2015, the
Clackamas County Board of Commissioners (the members of which are
named as Defendants in this action) voted to draft an amendment
that would allow for revision of some urban- and rural-reserve
designations and would redesignate the area that includes
Plaintiffs' property as "undesignated," which would, in effect,
remove from Plaintiffs' property the rule-based restrictions
applicable to rural reserves.


**STANDARDS**

Summary judgment is appropriate when there is not a "genuine
dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*. "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*


**DISCUSSION**

As noted, Plaintiffs raise equal-protection challenges to Defendants' designation of an area that includes Plaintiffs' land as a rural reserve. At the heart of Plaintiffs' challenge is their claim that Defendants treated Plaintiffs' land differently from similarly situated lands without a rational basis for doing so.

Defendants contend, among other things, that they are entitled to summary judgment on the basis that this case is not presently justiciable because the matter is not ripe for review. Because the Court ultimately concludes this case is not ripe, the Court need not address Defendants' other contentions.

## I. Ripeness Standard

"Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)(quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Thus, the "doctrine of ripeness . . . contains 'both a constitutional and prudential component.'" *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014)(quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)).

Prudential ripeness "has a 'twofold aspect, requiring'" the court "''to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015)(quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

"'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *US West Commc'ns v. MFS*

*Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)(quoting *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989)). *See also Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). In the context of a challenge to an administrative action, courts "consider 'whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)(quoting *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)). "Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012).

"'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *Stormans, Inc.*, 586 F.3d at 1126 (quoting *US West Commc'ns*, 193 F.3d at 1118)). When determining whether a litigant has shown that withholding review would result in a direct hardship, the court considers "whether the 'regulation requires an immediate and significant change in the plaintiffs' conduct of their

affairs with serious penalties attached to noncompliance.'"
*Stormans, Inc.*, 586 F.3d at 1126 (quoting *Ass'n of Am. Med. Colls.*, 217 F.3d at 783).

## II. Analysis

Defendants contend this matter is not ripe in light of the Oregon Court of Appeals' partial reversal of LCDC's Acknowledgment Order and LCDC's subsequent Remand Order. Defendants specifically argue Plaintiffs are not challenging a final action because under the Remand Order (1) Metro and Clackamas County may (even if they are not required to) reconsider designation of the area that includes Plaintiffs' property and (2) on resubmittal of designations by Metro and Clackamas County, the LCDC "will review a resubmittal of the Metro Region urban and rural reserves designations for acknowledgment of compliance" with the relevant statutes and LCDC rules.

Plaintiffs, in turn, contend this action is ripe because Plaintiffs' property is not in an area that Metro and Clackamas County are required to reconsider under the Oregon Court of Appeals' decision in *Barkers Five* or the Remand Order, and, therefore, Metro and Clackamas County's designation regarding Plaintiffs' property is sufficiently final to render this matter fit for judicial decision.

### A.    Fitness for Judicial Decision

As noted, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *US West Commc'ns*, 193 F.3d at 1118.  *See also Wolfson*, 616 F.3d at 1060.

Here the matter is not fit for judicial review at this time because pending municipal and legislative actions create sufficient uncertainty in the urban- and rural-reserve designation process to render the challenged action nonfinal and necessitate further factual development before this Court can consider Plaintiffs' constitutional challenges.

Although Plaintiffs are correct that Metro and Clackamas County are not required under the *Barkers Five* decision and the LCDC's subsequent Remand Order to reconsider the rural-reserve designation of the area that includes Plaintiffs' property, Plaintiffs' contention that the actions of Metro and Clackamas County are final with respect to Plaintiffs' property rests on the incorrect premise that the designation of Area 4J (in which Plaintiffs' property is located) is independent of the designations of areas such as Areas 4A though 4D that Metro and Clackamas County are required to reconsider under the Remand Order.

As noted, Oregon Revised Statute § 195.145(4) provides the total amount of urban reserves designated by Metro "must be

planned to accommodate population and employment growth for at least 20 years, and not more than 30 years" after the 20-year UGB planning period. Thus, contrary to Plaintiffs' contention that the designation of Area 4J is final and independent of other nonfinal designations of certain areas in the Portland metropolitan area, the designation of urban and rural reserves throughout the Portland metropolitan area requires a careful balancing of land-use interests on both a county-by-county and a Metro-wide scale. In other words, changes made to designations in other parts of the metropolitan area (perhaps including those areas of Clackamas County that require further consideration) could trigger reconsideration of the designation of Area 4J in order to meet the statutory and regulatory requirements for the Metro-wide urban- and rural-reserves designations. Moreover, since the remand Plaintiffs and Clackamas County have discussed proposing legislative action that would result in the redesignation of Area 4J and/or authorize an interim review of urban- and rural-reserve designations. Although the most recent legislative session has now ended without the proposal or passage of any such legislation, the parties' genuine discussions regarding policy changes that could result in a different designation for Area 4J and Plaintiffs' property underscores the dynamic nature of the urban- and rural-reserve designation process and any decision-making regarding Plaintiffs' property.

The Court cannot conclude on this record, therefore, that the designation of Area 4J as a rural reserve is final.

In summary, in light of the possibility of material changes at the municipal, state administrative, and legislative level during the pendency of this action, the Court concludes on this record that this action is not presently ripe for judicial decision.

### B.     Hardship to the Parties

Although there is not any evidence in this record from which the Court can conclude Plaintiffs will suffer undue hardship as the result of a finding that this case is not presently ripe for judicial decision, Plaintiffs nevertheless contend their property is currently encumbered by Oregon Administrative Rule 660-027-0070(3), which provides

> [c]ounties that designate rural reserves under this division shall not amend comprehensive plan provisions or land use regulations to allow uses that were not allowed, or smaller lots or parcels than were allowed, at the time of designation as rural reserves unless and until the reserves are re-designated, consistent with this division, as land other than rural reserves, except as specified in sections (4) through (6) of this rule.

Plaintiffs specifically assert Oregon Administrative Rule 660-027-0070(3) and the rural-reserve designation of Area 4J (even in its non-final status) prevent Plaintiffs from applying for a "Goal 2 exception" that would allow Plaintiffs to build a second eighteen-hole golf course on their property.  Plaintiffs submit

the Declaration of Chris Maletis (#169-1) in which Maletis states he and his brother were considering adding a second eighteen-hole golf course "[i]n the late 1990s," but in 2003 a regional public representative informed Maletis that the property was best suited for use as industrial land and "[t]he idea of an expansion of the golf course onto the adjacent property was placed on hold pending potential future Urban Growth Boundary expansion proposals."

The Metro Defendants disagree with Plaintiff's interpretation of the present state of the rural-reserve designations and Oregon Administrative Rule 660-027-0070(3) and contend "state land use law does not require plaintiffs to seek a goal exception to pursue expansion of their golf course onto adjacent EFU-zoned property."  The Court does not need to resolve this question of state land-use law, however, because Plaintiffs have not made any showing that they intend to pursue the development of the second golf course in the near future.  The mere fact that Plaintiffs considered such development more than a decade ago does not demonstrate any hardship that will befall Plaintiffs if the Court withholds review of their claims regarding the rural-reserve designation of their land until the designation process is final.

On this record, therefore, the Court concludes Plaintiffs will not suffer undue hardship as a result of this Court's decision not to review the designation at issue until the urban-

and rural-reserve designation process has been finalized.

Accordingly, the Court concludes this action is not ripe for judicial review.

## CONCLUSION

For these reasons, the Court **GRANTS** the Clackamas County Defendants' Motion (#136) for Summary Judgment, the State Defendants' Motion (#149) for Judgment on the Pleadings (converted into a Motion for Summary Judgment), and the Metro Defendants' Motion (#150) for Judgment on the Pleadings (converted into a Motion for Summary Judgment). The Court, therefore, **DISMISSES** this matter **without prejudice** and with leave to re-file in the event that Plaintiffs' claims remain viable after Defendants have rendered a final decision regarding the urban- and rural-reserve designations in the Portland metropolitan area.

IT IS SO ORDERED.

DATED this 28th day of September, 2015.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge